UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| PETER T. DVORAK, | ) | Case No. 9:11-BK-07437-BSS |
| Debtor. | ) | |
| | ) | |
| RBS CITIZENS NATIONAL ASSOCIATION d/b/a CHARTER ONE, | ) | |
| Plaintiff, | ) | Adversary Proceeding No. |
| vs. | ) | |
| PETER DVORAK, | ) | |
| Defendant. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. § 523(a)(2)(A), 523(a)(4) AND 523(a)(6)**

RBS Citizens National Association d/b/a Charter One (the "Bank"), a creditor in the above-referenced case, for its Complaint to Determine Dischargeability of Debt (the "Complaint") against Peter Dvorak (the "Debtor") pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6), alleges and states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157 and Rule 7008(a) of the Federal Rules of Bankruptcy Procedure.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4. November 14, 2011 was established by the Court as the last day to file a complaint to determine the dischargeability of the Debtor's debt to the Bank pursuant to 11 U.S.C. §523. Therefore, this Complaint has been filed timely.

**Factual Allegations Common to All Counts**

5. RBS Citizens National Association, d/b/a Charter One is an Indiana financial institution which maintains an office at 10333 North Meridian Street, Suite 200, Indianapolis, Indiana 46290.

6. Peter Dvorak ("Dvorak") is currently a Florida resident with a last known address of P.O. Box 1425, Naples, Florida 34106.

7. On or about October 3, 2007, Midwest Commercial Investments VI, LLC ("Midwest") executed and delivered to the Bank a Construction Loan Agreement in the original principal amount of Eleven Million Eight Hundred Eighty and 00/100 Dollars ($11,880,000.00) (the "Construction Loan Agreement") which governed the terms of the Note (defined below). A true, correct and authentic copy of the Construction Loan Agreement is attached hereto as **Exhibit A** and by reference made a part hereof.

8. On or about October 3, 2007, Midwest executed and delivered to the Bank a Mortgage Note in the original principal amount of Eleven Million Eight Hundred Eighty and 00/100 Dollars ($11,880,000.00) (the "Note"). A true, correct and authentic copy of the Note is attached hereto as **Exhibit B** and by reference made a part hereof.

9. In connection with the Loan Agreement and Note, Midwest executed and delivered to the Bank an ISDA Master Agreement dated September 27, 2007 (the "ISDA Master Agreement") and Schedule to the Master Agreement regarding the interest rate that Midwest was to receive for certain credit facilities extended by the Bank. A true, correct and authentic copy of

the ISDA Master Agreement is attached hereto as **Exhibit C** and by reference made a part hereof.

10. On or about September 27, 2007, Midwest executed and delivered to the Bank a letter agreement confirming the terms and conditions of the ISDA Master Agreement (the "Confirmation") (the ISDA Master Agreement and the Confirmation collectively are the "Swap Agreement"). A true, correct and authentic copy of the Confirmation is attached hereto as **Exhibit D** and by reference made a part hereof.

11. In order to secure all amounts due under the Note, on or about October 3, 2007, Midwest executed and delivered to the Bank a Real Estate Mortgage and Security Agreement (and Fixture Filing) (the "Mortgage"), wherein Midwest granted the Bank a mortgage on the commercial real estate commonly known as 2200 Elmwood Avenue and 2530 Elmwood Avenue Lafayette, Indiana (collectively, the "Real Estate"), which Mortgage was recorded with the Tippecanoe County Recorder as Document No. 07021355 on October 10, 2007. A true, correct and authentic copy of the Mortgage is attached hereto as **Exhibit E** and by reference made a part hereof.

12. Pursuant to the Mortgage, Midwest also granted the Bank a security interest in all personal property located on the Real Estate (collectively, the "Collateral").

13. On or about October 5, 2007, the Bank perfected its security interest in the Collateral by filing a Financing Statement as File No. 200700009305905 in the Office of the Indiana Secretary of State (the "Financing Statement"). A true, correct and authentic copy of the Financing Statement is attached hereto as **Exhibit F** and by reference made a part hereof.

14. In order to further secure all amounts due under the Note, on or about October 3, 2007, Midwest executed and delivered to the Bank an Assignment of Rents and Leases (the

"Assignment") wherein Midwest granted the Bank an assignment of its interest in the leases and rents from the Real Estate, which Assignment was recorded with the Tippecanoe County Recorder as Document No. 07021356 on October 10, 2007. A true, correct and authentic copy of the Assignment is attached hereto as **Exhibit G** and by reference made a part hereof.

15. On October 3, 2007, Dvorak executed and delivered to the Bank a Guaranty of Payment wherein Dvorak guaranteed all indebtedness owed by Midwest to the Bank (the "Guaranty"). A true, correct and authentic copy of the Guaranty is attached hereto as **Exhibit H** and by reference made a part hereof.

16. The Construction Loan Agreement, Note, Swap Agreement, Mortgage, Assignment, Financing Statement, Guaranty, and any other loan documents executed in connection therewith, collectively are the "Loan Documents."

17. Midwest defaulted under the terms of the Construction Loan Agreement and Note, for among other things, failure to make payments when due thereunder and granting of a junior lien on the Real Estate to Canterbury Partners.

18. As a result of these defaults, the Bank declared the entire amount of the Note to be due and payable in full.

19. By letter dated July 14, 2009, the Bank demanded payment of all obligations owed under the Construction Loan Agreement and Note (the "Demand Letter"). A true, correct and authentic copy of the Demand Letter is attached hereto as **Exhibit I** and by reference made a part hereof.

20. The Bank filed suit on the Note and other Loan Documents and also asserted claims against Dvorak for, *inter alia*, fraud on a financial institution.

21. On November 16, 2009, Midwest filed bankruptcy in United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division, Case No. 09-16788-JKC-11.

22. Midwest ultimately confirmed a plan of reorganization ("Plan") pursuant to an Order entered September 14, 2010.

23. Pursuant to the Plan, the Bank retained a secured claim in the amount of $9,531,847.02.

24. Midwest is now in default under the Plan for, *inter alia*, failure to make payments to the Bank and to pay real estate taxes.

25. Dvorak was the 100% owner of the equity interest of Midwest and retained his ownership interest under the terms of the Plan.

26. Upon information and belief, Dvorak caused funds from the post-petition operation of the Midwest to be transferred to him and then used said funds for purposes other than as provided under the Plan.

27. On April 20, 2011, Dvorak filed the above-captioned personal bankruptcy case.

28. On July 29, 2011, the Bank filed its claim in this bankruptcy case in the amount of $9,531,847.02.

29. Pursuant to Orders entered on or about July 28, 2011, September 16, 2011 and October 17, 2011, the Bank obtained extensions of time to file a complaint objecting to the dischargeability of its claims.

30. The Bank has retained the firms of Krieg, DeVault, LLP and Jeffrey W. Leasure, P.A. and has agreed to pay said attorneys a reasonable fee for their services rendered herein.

## Count I

## 11 U.S.C. § 523(a)(2)(A)

The Bank, for Count I of its Complaint against Dvorak, states:

31. The Bank incorporates by reference paragraphs 1 through 30 of its Complaint as if fully repeated herein.

32. Bankruptcy Code section 523(a)(2)(A) provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .—(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;" 11 U.S.C. § 523(a)(2)(A).

33. In connection with obtaining the loan from the Bank as evidenced by the Construction Loan Agreement and Note, Dvorak represented to the Bank that he would contribute $1,000,000.00 of his own funds to Midwest and to the project. The Credit Proposal Summary-CRE for the Bank reflects this requirement in the Source(s)/Use(s) section as "Dvorak Cash Collateral $850,000" and "Dvorak covering closing costs $150,000." The Commitment Letter sent by the Bank to Dvorak also contains the same requirements. A true and accurate copy of the Credit Proposal Summary-CRE and Commitment Letter are attached hereto as collective **Exhibit J** and by reference made a part hereof.

34. But for Dvorak's representation regarding his substantial capital contribution, the Bank would not have made the loan to Midwest.

35. Contrary to his representations and without the Bank's knowledge, Dvorak and/or Midwest obtained a loan from another lender Canterbury Partners, which is an Indiana limited liability corporation ("Canterbury") in the amount of $1,000,000.00, and gave Canterbury a note

and a silent mortgage on the Real Estate which was not to be recorded unless the loan was not repaid ("Canterbury Mortgage"). A copy of the Canterbury Mortgage is attached hereto as **Exhibit K** and by reference made a part hereof.

36. The granting of this junior lien was a further violation of and default under the Construction Loan Agreement and other Loan Documents.

37. Dvorak obtained the loan from the Bank by means of false or fraudulent pretenses, representations, or promises and with actual fraudulent intent as demonstrated by his efforts to hide the Canterbury Mortgage in lieu of his capital contribution to the operations of Midwest.

38. Dvorak made representations that he would contribute $1,000,000.00 of his capital to the project; at the time he made said representations he knew they were false because he was obtaining the secret Canterbury Mortgage to fund the $1,000,000.00 contribution; Dvorak made the false representation with the intent to deceive the Bank and cause it to make its loan to Midwest; the Bank justifiably relied on Dvorak's representations and made the loan to Midwest; and the Bank has now been damaged in that the loan has not been repaid and the Bank would not have made the loan if it knew Dvorak was not contributing equity to the project but was rather incurring additional debt.

39. As a result, the Debtor's debt to the Bank is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

**WHEREFORE**, the Bank respectfully requests that the Court determine that the Debtor's debt to the Bank, in the amount of $9,531,847.02., associated with this action is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), for attorneys' fees and costs, and for all other relief just and proper in the premises.

## COUNT II

## 11 U.S.C. § 523(a)(4)

40. The Bank incorporates the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

41. Bankruptcy Code section 523(a)(4) provides that "[a] discharge under section...727 of this title does not discharge an individual debtor from any debt – . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;" 11 U.S.C. § 523(a)(4).

42. As the sole and controlling member of Midwest and the proponent of Midwest's Plan, Dvorak is a fiduciary in Midwest's bankruptcy case.

43. Dvorak's diversion of funds from the operations of Midwest to purposes other than satisfaction of the claims of creditors as provided under the Plan constitutes a breach of his fiduciary duty to the Bank and other creditors.

44. As a result, the Debtor's debt to the Bank is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, the Bank respectfully requests that the Court determine that the Debtor's debt to the Bank, in the amount of $9,531,847.02, associated with this action is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4), for attorneys' fees and costs, and for all other relief just and proper in the premises.

## COUNT III

## 11 U.S.C. § 523(a)(6)

45. The Bank incorporates the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

46. Bankruptcy Code section 523(a)(6) provides that "[a] discharge under section...727 of this title does not discharge an individual debtor from any debt – . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;" 11 U.S.C. § 523(a)(6).

47. Dvorak's diversion of funds from the operations of Midwest to purposes other than satisfaction of the claims of creditors as provided under the Plan constitutes a willful and malicious injury by him to the creditors of Midwest, including the Bank.

48. As a result, the Debtor's debt to the Bank is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, the Bank respectfully requests that the Court determine that the Debtor's debt to the Bank, in the amount of $9,531,847.02, associated with this action is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), for attorneys' fees and costs, and for all other relief just and proper in the premises.

DATED this 14th day of November, 2011.

JEFFREY W. LEASURE, ESQ.
FLORIDA BAR NO. 348287
JEFFREY W. LEASURE, P.A.
Attorneys for CHARTER ONE
P.O. Box 61169
Fort Myers, FL 33906-1169
Telephone No. (239) 275-7797
Telefax No. (239) 275-6856
Email: jwl@leasurelaw.com

KD_3720122_1.DOC