# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| PETER T. DVORAK, | ) Case No. 9:11-bk-07437-BSS |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |
| RBS CITIZENS NATIONAL ASSOCIATION D/B/A CHARTER ONE, | ) |
| | ) |
| Plaintiff, | ) Adv. Pro. No. 9:11-ap-01259-BSS |
| | ) |
| vs. | ) |
| | ) |
| PETER T. DVORAK, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF RBS CITIZENS NATIONAL ASSOCIATION'S RESPONSE TO DEFENDANT PETER T. DVORAK'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH

Now comes Plaintiff RBS CITIZENS NATIONAL ASSOCIATION D/B/A CHARTER ONE ("*RBS*"), a creditor in the above-referenced case, by its counsel Jeffrey W. Leasure, P.A. and Goldstein & McClintock LLLP, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, and for its Response to Defendant Peter T. Dvorak's ("*Dvorak*") Motion for a Protective Order and to Quash, states as follows:

### INTRODUCTION

Under Federal Rule 26, at minimum, parties are allowed discovery on all matters relevant to their claims. In Count III of its Third Amended Complaint (the "*Complaint*"), RBS alleges that Dvorak's debts are not dischargeable under § 523(a)(6) of the Bankruptcy Code, in part,

because he diverted loan proceeds to bank accounts he controlled. At least one of these accounts was located at Shamrock Bank in Naples, Florida ("*Shamrock*"). So in an effort to develop facts supporting Count III, RBS served Shamrock with a subpoena asking for documents relating to Dvorak's accounts there.

Dvorak has now moved to quash this subpoena, claiming that it extends beyond the contours of Rule 26. In his motion, Dvorak does not address Count III or any claim involving § 523(a)(6).

Instead, he contends that any discovery seeking "financial or operating information" is impermissible in the absence of a punitive damage claim. But none of the cases Dvorak relies on support this proposition. In each instance, the defendant's financial information was not relevant to the underlying suit. Such is not the case here, where Dvorak's records from Shamrock bear directly on Count III of the Complaint. In these instances, courts have made clear that financial information is "fully discoverable."

At bottom, RBS is seeking information to support its claim that Dvorak diverted funds by obtaining records from bank accounts that may have been involved in those transfers. Dvorak's motion does not mention RBS' claim that he diverted funds or explain how RBS' subpoena cannot lead to evidence relevant to that claim.

Therefore, the Court should deny Dvorak's motion and allow RBS to enforce its subpoena.

## ARGUMENT

### I. STANDARD OF REVIEW

Subpoenas to non-parties are governed by Federal Rule 26. *Kona Spring Water Distrib. v. World Triathlon*, 2006 WL 905515, at *2 (M.D. Fla. April 7, 2006). Under Rule 26, "the

scope of discovery is broad." *Donahay v. Palm Beach Tours & Trans.*, 242 F.R.D. 685, 687 (S.D. Fla. 2007). A party may obtain discovery on "any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action." *Id.*; *see also* Fed. R. Civ. Pro. 26(b)(1). The term "relevant" is also construed broadly. It encompasses "any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." *Donahay*, 242 F.R.D at 687. This standard even extends beyond the allegations in the complaint because "discovery is designed to help define and clarify the issues." *Id.*

"A party may request a protective order for a subpoena to a non-party if the subpoena seeks materials that are not relevant." *Malibu Media LLC v. John Does 1-35*, 2012 WL 4513050, at *5 (M.D. Fla. Aug. 15, 2012). But the burden is on "the party seeking a protective order" to demonstrate that the requested documents are not relevant. *Id.*

Here, RBS' subpoena targets allegations in Count III. Thus, it fits within the expansive boundaries of discovery, and Dvorak cannot show that the requested information is not relevant.

## II.     THE SUBPOENA SEEKS INFORMATION RELEVANT TO THE ALLEGATIONS IN COUNT III

In Count III, RBS alleges that Dvorak's debts are not dischargeable under §523(a)(6). In relevant part, that section reads, "[a] discharge under section…727 of this title does not discharge an individual debtor from any debt – . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." (Compl. ¶ 8.) In support of its 523(a)(6) claim, Count III sets forth the following allegations:

> 88.     After fraudulently obtaining the Loan, Dvorak *misused substantial portions of the funds provided by the Bank* and *divert[ed] Midwest's assets* by causing Midwest not to pay certain necessary expenses or *transferring funds to either entities controlled by Midwest or to himself personally*, all instead of paying the Bank.

89.     Second, Dvorak knew that his conduct would contribute to the failure of the Real Estate Project. As a sophisticated real estate developer, ***Dvorak certainly understood that failing to make necessary payments and diverting funds away from Midwest would cause substantial problems for the Real Estate Project.*** Further, Dvorak knew that, if the Real Estate Project failed, Dvorak and Midwest would not be able to repay the Bank its Loan, and, even with a sale of the underdeveloped Real Estate Project, the Bank would suffer a substantial loss.

90.     Finally, Dvorak knew that, once Midwest entered into bankruptcy, ***Dvorak's diversion of assets from Midwest*** would deprive the Bank of repayment for the Loan. ***This violated Dvorak's obligation to preserve the assets of Midwest*** for the benefit of its creditors, including the Bank.

(Compl. ¶¶ 88-90 (emphasis added).) In Paragraph 34, RBS names Shamrock Bank as one of the institutions to which Dvorak diverted assets. (Compl. ¶ 34.) So Dvorak's diversion of loan proceeds is central to the theory of liability in Count III.

RBS' subpoena targets this conduct in that it seeks bank statements from Dvorak's accounts at Shamrock (Rider Req. #'s 1-4), documents showing transfers to and from those accounts (Rider Req. #'s 5-12), and documents showing transfers Dvorak made to Shamrock accounts for which he was not a signatory (Rider Req. #'s 13-16). Because all of these documents could show evidence that Dvorak diverted loan proceeds, the requests fall squarely within the broad discovery standard explained above.

Thus, the Court should deny Dvorak's motion and allow RBS to obtain the requested documents from Shamrock.

### III.     DVORAK HAS FAILED TO SHOW HOW THE REQUESTED DOCUMENTS ARE NOT RELEVANT TO THE ALLEGATIONS IN COUNT III

Dvorak makes three arguments for why Shamrock should not have to produce documents: (1) Discovery of financial information is not allowable "when a punitive damages claim has not been asserted"; (2) RBS' subpoena is not "calculated to lead to admissible

evidence regarding the Loan, the Shopping Center, or the Defendant's alleged indebtedness to the Plaintiff"; and (3) The subpoena is not limited to a time period. (Mot. to Quash ¶¶ 7-11.)

*First*, Dvorak argues that "Federal courts have not allowed pretrial discovery of financial or operating information when a punitive damages claim has not been asserted." (Mot. to Quash ¶ 10.) So according to Dvorak, because RBS "has no factual basis for any award of punitive damages," it should be barred from obtaining his financial information.

But none of the cases Dvorak cites support this proposition. In each case, the financial information was not relevant to any of the underlying claims. *John Does I-VI v. Yogi*, 110 F.R.D. 629, 635 (D.D.C. 1986) (limited disclosure of financial information that was only relevant to punitive damages); *David v. Ross*, 107 F.R.D. 326, 327 (S.D.N.Y. 1985) (defamation case where finances only sought for purposes of punitive damage claim); *Chenoweth v. Schaff*, 98 F.R.D. 587, 588-90 (W.D. Pa. 1983) (medical malpractice case where doctor's financial information only relevant if court allowed punitive damages claim); *Rupe v. Fourman*, 532 F. Supp. 344, 350-351 (S.D. Ohio 1981) (refusing to compel answer to deposition questions about financial status until punitive damages portion of trial).

Here, that is not the case. RBS is asking for financial information that relates directly to a specific count in the Complaint (Count III) that alleges Dvorak diverted loan proceeds to the bank at issue. So unlike in the cases Dvorak cites, RBS' subpoena bears directly on one of its causes of action. Therefore, it seeks relevant information.

The Florida Supreme Court explained this distinction: "Generally, private financial information is not discoverable when there is no financial issue pending in the case to which the discovery applies. However, where materials sought by a party would appear to be relevant to the subject matter of the pending action, the information is fully discoverable." *Bd. of Trustees of*

*Internal Improvement Fund v. Am. Educ. Enters.*, 99 So. 3d 450, 457-58 (Fla. 2012). In these instances, it is routine for courts to allow production of financial documents. *Groupwell Int'l (HK) Ltd. v. Gourmet Express, LLC*, 277 F.R.D. 348, 359 (W.D. Ky. 2011) (ordering discovery of financial information where it "tends to prove the Plaintiffs' case in chief"); *In re Pasco Tobacco Co., Inc.*, 41 B.R. 394, 395-96 (Bankr. E.D. Pa. 1984) (ordering discovery of bank records where trustee had filed adversary proceeding alleging diversion of funds). Consequently, the absence of a punitive damage claim is not grounds to quash RBS' subpoena.

***Second***, Dvorak views the issues in this suit too narrowly. He implies that the subpoena can only target information relevant to the "Loan, the Shopping Center, or the Defendant's alleged indebtedness to the Plaintiff." Dvorak also notes that the Complaint makes only a "single mention of Shamrock," implying that Shamrock has little relevance to RBS' theories of recovery. But at no point does Dvorak address the allegations relating to his diversion of assets or RBS' claim under 523(a)(6). As such, he does not, and cannot, refute the obvious conclusion that his Shamrock records are relevant to Count III and should be produced.[1]

***Third***, Dvorak makes much of the fact RBS' subpoena has no time restriction. On October 11, 2013, RBS' counsel called Dvorak's counsel and offered to limit the subpoena to the time after Dvorak obtained the loan. This would have narrowed the subpoena to only those periods when loan proceeds could have been diverted.

Dvorak's counsel chose not to accept this offer and instead filed this motion to quash. Nonetheless, RBS remains willing to limit its requests to activity after the loan was executed. Thus, Dvorak's concerns over the lack of a time restriction can be alleviated.

---

[1] It should also be noted that the fact RBS has included the one Shamrock transfer it knows about in the Complaint does not diminish its right to seek evidence of other transfers.

## CONCLUSION

RBS' Complaint alleges that Dvorak violated § 523(a)(6) by diverting loan proceeds to bank accounts that he controlled. RBS' subpoena targets documents relating to those accounts. Further, Dvorak has failed to meet his burden of demonstrating how the requested documents are not relevant. Therefore, the Court should deny Dvorak's motion and allow RBS to enforce its subpoena.

*{Remainder of Page Left Intentionally Blank}*

**WHEREFORE**, RBS Citizens National Association respectfully requests that the Court enter an order denying Peter T. Dvorak's Motion for a Protective Order and to Quash RBS' Subpoena to Shamrock Bank, and for all other relief that the Court deems just and proper.

DATED this 17th day of October, 2013.

        RBS CITIZENS NATIONAL ASSOCIATION,
        AS SUCCESSOR BY MERGER TO CHARTER
        ONE BANK, N.A.

By: /s/ Jeffrey W. Leasure

        Jeffrey W. Leasure
        Florida Bar No. 348287
        JEFFREY W. LEASURE, P.A.
        P.O. Box 61169
        Fort Meyers, Florida 33906
        P: 239-275-7797
        F: 239-275-6856

        -AND-

        Harold Israel
        Terence D. Brennan
        GOLDSTEIN & MCCLINTOCK LLLP
        208 South LaSalle Street
        Suite 1750
        Chicago, Illinois 60604
        P: 312-337-7700
        F: 312-277-2305

        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail or Electronically to Michael L. Schuster, Esq., Genovese Joblove & Battista, P.A., 100 Southeast 2nd Street, Suite 4400, Miami, FL 33131, on this 18th day of October, 2013.

By: _____
JEFFREY W. LEASURE

1